**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2042. SUNTRUST BANK, AS ADMINISTRATOR OF THE ESTATE OF MICHAEL PATRICK v. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA.

ELLINGTON, Chief Judge.

In this appeal arising from a personal injury lawsuit, SunTrust Bank ("SunTrust"), as the administrator of the estate of Michael Patrick, appeals from the trial court's order granting a motion to enforce a subrogation lien that was filed by Travelers Property Casualty Company of America ("Travelers"), the workers' compensation insurer for Patrick's employer, Unique Industry Corporation. Patrick was injured in a collision while working for his employer, and he received workers' compensation benefits before filing suit against two third-party tortfeasors, Associated Grocers of the South, Inc. ("Associated Grocers") and Larry Granger, whose negligence caused the collision. Although Travelers timely intervened in the

suit in order to protect its workers' compensation subrogation lien, Patrick and the tortfeasors settled the case for a confidential "lump sum" without Travelers' knowledge, participation or consent. Among other terms, the settlement agreement included a conclusory statement that the proceeds of the settlement did not fully and completely compensate Patrick for his injuries. On appeal, SunTrust contends that the trial court erred in finding that the express terms of the settlement agreement did not extinguish Travelers' right to enforce its subrogation lien. For the following reasons, we find no error and affirm.

The record shows the following relevant, undisputed facts. On March 27, 2007, Patrick was driving a pickup truck on Interstate 985 when a tractor-trailer driven by Granger struck his truck from behind and caused Patrick to suffer severe, permanent injuries. At the time of the collision, Granger was working for Associated Grocers, while Patrick was working for Unique Industry Corporation. As a result of Patrick's injuries, Unique Industry's workers' compensation insurance carrier, Travelers, paid him over $800,000 in workers' compensation benefits for medical costs and lost wages.

In November 2008, Patrick filed a negligence and personal injury suit against Granger and Associated Grocers (collectively, "AG").[1] Travelers moved to intervene in the suit in order to protect its workers' compensation subrogation rights under OCGA § 34-9-11.1 (b),[2] and the trial court granted the motion.

---

[1] See OCGA § 34-9-11.1 (a) ("When the injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability against some person other than the employer, the injured employee or those to whom such employee's right of action survives at law may pursue the remedy by proper action in a court of competent jurisdiction against such other persons, except as precluded by Code Section 34-9-11 or otherwise.").

[2] In relevant part, OCGA § 34-9-11.1 (b) provides as follows:

In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien.

See also OCGA § 9-11-24 (a) (1) ("Intervention of right. Upon timely application anyone shall be permitted to intervene in an action . . . [w]hen a statute confers an unconditional right to intervene[.]"); *Dept. of Admin. Svcs. v. Brown*, 219 Ga. App. 27, 28 (464 SE2d 7) (1995) (OCGA § 9-11-24 (a) (1) grants an employer and its workers' compensation insurer an unconditional right to intervene in a suit brought by its employee against a third-party tortfeasor in order to protect and enforce its subrogation lien under OCGA § 34-9-11.1 (b).).

On February 2 or 3, 2010, an employee of the law firm representing AG notified Travelers' counsel that a mediation session had been scheduled in an effort to settle Patrick's suit. On February 8, however, an attorney with that law firm told Travelers' counsel that AG and Patrick were not going to allow Travelers to attend or participate in the mediation. In response, Travelers' attorney insisted that, as a party to the suit pursuant to its intervention, a representative of Travelers should be allowed to attend and represent its interests during the mediation. Later that day, AG's attorney told Travelers' attorney that the mediation session with Patrick had been cancelled and that, at trial, his clients (AG) would admit their liability for Patrick's injuries.

Unbeknownst to Travelers, however, Patrick and AG actually proceeded with the mediation on February 10, 2010, during which they executed a confidential, "lump sum" settlement of the suit. The next day, AG's attorney notified Travelers that his clients and Patrick had settled the suit and that he could not disclose the terms of the settlement to Travelers because they were confidential.

Patrick then filed a motion to extinguish Travelers' workers' compensation subrogation lien. In response, Travelers filed a motion to protect and enforce its lien interest. Patrick filed a motion for a protective order to keep the terms of the

settlement agreement confidential, while Travelers filed a motion to compel discovery of, inter alia, the agreement's terms. Following a hearing on the motions, the trial court granted Travelers' motion to compel and denied Patrick's request for a protective order.

The terms of the settlement agreement were then disclosed, and, in addition to the settlement amount,[3] they included the following provisions: that the settlement amount would remain confidential, except as required by law or by court order;[4] that Patrick would indemnify AG for any workers' compensation subrogation claims that Travelers may assert against AG; and that Patrick would sign a general release as to AG's liability and would dismiss his suit against AG. In addition, the settlement agreement stated that "[a]ll parties acknowledge that [Patrick] has not been made whole or fully compensated for his claims" by the settlement.

Following this disclosure, the trial court issued an order granting Travelers' motion to enforce its workers' compensation subrogation lien. In its order, the court concluded that Travelers' absolute right to intervene in Patrick's personal injury suit

_____

[3] The amount of the settlement has been redacted from the appellate record.

[4] Contrary to AG's prior representations that all of the settlement's terms were confidential, the agreement specifically provides that only the *amount* of the settlement was to remain confidential.

5

against AG, pursuant to OCGA § 34-9-11.1 (b), would be rendered null and unenforceable if Patrick and AG could summarily extinguish Travelers' subrogation lien simply by executing a "lump sum" settlement agreement stating that the settlement amount did not completely compensate Patrick for his injuries. The court concluded that Travelers was entitled to a hearing, during which Travelers could attempt to enforce its subrogation lien by proving to the court, as the finder of fact, that Patrick had been "fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses [he] incurred as a result of the injur[ies]," pursuant to OCGA § 34-9-11.1 (b).[5]

Before conducting the hearing, however, the trial court granted Patrick's request for a certificate of immediate review. This Court granted the interlocutory application, and this appeal followed. After this Court docketed the appeal, however,

_____

[5] See OCGA § 34-9-11.1 (b) (The employer's or insurer's recovery on its workers' compensation subrogation lien "shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.").

6

Patrick died, and SunTrust, as the administrator of his estate, was substituted as the appellant.[6]

1. In arguing that the trial court's order on Travelers' motion to enforce its subrogation lien constitutes reversible error, SunTrust contends that, given the express terms of the "lump sum" settlement agreement between Patrick and AG, it will be impossible for Travelers to meet its threshold burden for enforcing its subrogation lien under OCGA § 34-9-11.1 (b), i.e., proving that the workers' compensation benefits Patrick received, plus the proceeds of his settlement with AG, "fully and completely compensated [him] . . . for all [of his] economic and noneconomic losses" that resulted from his injuries. SunTrust asserts two bases for this argument: (a) the parties to the agreement specifically acknowledged in the agreement that Patrick has not been made whole or fully compensated for his injuries; and (b) the "lump sum" settlement amount fails to expressly divide the proceeds between Patrick's economic damages (i.e., his medical expenses and lost wages) and his noneconomic damages (i.e., pain and suffering).

---

[6] See Court of Appeals Rule 43 (a), (d).

(a) As to the first issue, it is solely for the trial court – not a jury, the employee,[7] or third-party tortfeasors – to determine whether the insurer has met its burden of showing that the employee has been fully compensated for his or her injuries. See *Austell Healthcare v. Scott*, 308 Ga. App. 393, 397 (4) (707 SE2d 599) (2011) ("If an employer has intervened in an employee's lawsuit against a third-party tortfeasor, after the employee has obtained a verdict in his favor *or* settled the case, it is the trial court's duty to consider evidence and determine whether the employee has been fully and completely compensated. In doing so, the trial court is required to weigh the evidence and make a factual determination as to whether the employer has carried its burden.") (citation omitted; emphasis in original); see also *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 870-873 (1), (2) (570 SE2d 60) (2002) (accord); *Ga. Elec. Membership Corp. v. Garnto*, 266 Ga. App. 452, 453-454 (597 SE2d 527) (2004) (accord); see also *City of Warner Robins v. Baker*, 255 Ga. App. 601, 602 (1) (a) (565 SE2d 919) (2002) (The determination of whether an employee has been fully

---

[7] See *Dept. of Admin. Svcs. v. Brown*, 219 Ga. App. at 28 (noting that the interests of an employee and an insurer may conflict when the insurer asserts a workers' compensation subrogation lien against the employee's recovery in a suit against a third-party tortfeasor).

and completely compensated is a mixed question of law and fact. Therefore, it requires the presentation of evidence.).

Moreover, "one of the fundamental rules of the law of contracts is that only those parties to the agreement are bound by it." *Leone Hall Price Foundation v. Baker*, 276 Ga. 318, 320 (3) (577 SE2d 779) (2003). Here, Travelers was intentionally excluded from the settlement negotiations, was not a party to the settlement agreement, and has never consented to the agreement. Thus, Travelers is not bound by the settlement agreement's statement that Patrick and AG "acknowledge" that Patrick has not been fully compensated for his injuries. Id.

(b) As to the second issue, SunTrust argues that Georgia's law is "clear" that an employer or insurer may *never* enforce a workers' compensation subrogation lien against an employee's recovery from a lawsuit against a third-party tortfeasor when that suit results in either a general, non-itemized jury verdict or a "lump sum" settlement. According to SunTrust, because a workers' compensation subrogation lien is limited to the total amount of economic benefits the insurer has paid to the employee and only applies to an employee's recovery of economic damages from the third-party tortfeasor,[8] the lien is *unenforceable as a matter of law* against a jury

---

[8] *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. at 871 (1).

9

verdict or settlement that does not apportion the proceeds between economic and noneconomic damages. In making this argument, SunTrust relies on a line of opinions from this Court that appear, at first glance, to support this broad, bright line rule by including the following (or comparable) language (hereinafter referred to as the "language at issue"):

> When the employee has received a jury award, [courts] cannot determine from a general verdict form what portion of an award was meant to compensate the employee for economic losses and what portion was meant to cover noneconomic losses. The same is true when the employee negotiates a settlement of his claim against the tortfeasor and the settlement is a lump sum. [Courts] cannot determine from the settlement documents what portion of the settlement was allocated to economic losses and what portion was meant to compensate for noneconomic losses. *The result is that the lien cannot be enforced, because full and complete compensation cannot be shown*.

(Citation omitted; emphasis supplied.) *City of Warner Robins v. Baker*, 255 Ga. App. at 604-605 (3). Having thoroughly reviewed each of the opinions upon which SunTrust relies, however, we have concluded that those cases are neither applicable to nor dispositive in this case for the following reasons.

Several of the cases relied upon by SunTrust are clearly distinguishable from the instant case because, unlike Travelers, the employers or insurers in those cases *did*

10

*not intervene* in the employees' lawsuits or *take other available measures to protect their subrogation liens*. For example, in *Canal Ins. Co. v. Liberty Mutual Ins. Co.*, this Court held that an insurer's failure to intervene in an employee's suit against a third-party tortfeasor, and then to request a special verdict or settlement that distinguished between an award of economic versus noneconomic damages, constituted a failure by the insurer to protect its subrogation lien. 256 Ga. App. at 869-874 (1), (2). As a result of its inaction, the insurer could not enforce its lien, because it would be unable to prove that the employee had been fully compensated under such circumstances. Id.; see also *CGU Ins. Co. v. Sabel Indus.*, 255 Ga. App. 236 (564 SE2d 836) (2002) (accord).

As for other cases relied upon by SunTrust, the broad, conclusive language at issue constitutes mere dicta, because, in each of those cases, the trial court *still* provided the employer/insurer an opportunity to present evidence on whether the employee had been fully compensated, and the trial court and this Court *still* reviewed that evidence to determine whether the employer/insurer had met its burden of proof. For example, in *City of Warner Robins v. Baker*, the trial court conducted a hearing on whether the employer could enforce its subrogation lien even though the employer had failed to intervene in its employee's lawsuit, which ended in a $90,000 lump sum

11

settlement. 255 Ga. App. at 601-602. Further, on appeal, even though there was no transcript of the hearing in the appellate record, this Court reviewed the evidence in the remaining record, which showed that the employee had presented evidence of his permanent disabilities, of the amount of medical expenses he had incurred, of the pain and suffering and severe mental health problems he continued to experience, and of his possible future medical expenses. Id. at 605 (3). The record also showed that the employee recovered about $59,000 from the settlement (after subtracting attorney fees and costs), that he had incurred at least $135,000 in medical expenses, and that he had received about $49,000 through workers' compensation benefits (which was the amount of the lien). Id. Under these circumstances, this Court ruled that the trial court was authorized to conclude that the employer had failed to carry its burden of showing that the employee had been fully and completely compensated and, thus, could not enforce its subrogation lien. Id.

Similarly, in *CGU Ins. Co. v. Sabel Indus.*, the insurer intervened in the employee's lawsuit after it had been settled for a lump sum of $4.5 million, but before it had been dismissed. 255 Ga. App. at 237-238. The settlement covered both the employee's tort claims and his wife's loss of consortium claim, although it did not allocate a specific amount of the award to the latter's claim. Id. Even so, the trial

12

court conducted a hearing on whether the insurer could enforce its subrogation lien, during which the employee showed that he had suffered a traumatic amputation of his leg and other severe injuries, resulting in several surgeries, extreme pain and suffering, and extensive rehabilitation. Id. at 237-238. In response, the insurer presented the testimony of two expert witnesses, but neither had interviewed the employee or his wife, and both experts admitted that, in reaching their opinions, they had failed to consider certain essential evidence, including, inter alia, the employee's complete educational and work history, the full extent of his injuries, and his need for future surgeries and other medical treatment. Id. at 239-241 (1). The trial court ruled that this expert testimony was speculative and, thus, "woefully deficient" in assisting the insurer in meeting its burden of proof, and, as a consequence, the insurer could not enforce its subrogation lien. Id. at 241 (1). Because some evidence supported the trial court's conclusion, this Court affirmed its judgment. Id.[9]

_____

[9] See also *Austell HealthCare v. Scott*, 308 Ga. App. at 393-396 (1) (After the employee settled his third-party suit for a lump sum of $76,000, he moved to extinguish the $59,000 subrogation lien held by his employer and insurer. The employee presented evidence of his surgeries and permanent partial disability and argued that he had not been fully compensated by the settlement proceeds. The employer and insurer failed to come forth with any evidence to show otherwise, and they failed to provide a transcript of the hearing for appellate review. As a result, this Court affirmed the trial court's conclusion that the employer had not met its burden of proof and its grant of the employee's motion to extinguish the lien.); *Paschall*

13

And, although this Court included the language at issue in *North Bros. Co. v. Thomas*, the jury in that case actually issued a *special verdict*, awarding the employee $25,000 for his medical expenses and $25,000 for his noneconomic damages. 236 Ga. App. 839, 841 (513 SE2d 251) (1999).[10] Thus, the language was merely advisory and clearly dicta.

Finally, as for SunTrust's reliance on *Bartow County Bd. of Educ. v. Ray*, that case is clearly distinguishable on the facts from the instant case. 229 Ga. App. 333 (494 SE2d 29) (1997). Although the employer intervened in its employee's suit

*Truck Lines v. Kirkland*, 287 Ga. App. 497, 499 (651 SE2d 804) (2007) (After the employee settled his third-party suit for a lump sum of $100,000, he moved to extinguish his employer's subrogation lien by presenting evidence that showed he had not been fully compensated by the settlement proceeds, and his employer failed to come forth with any evidence to show otherwise. As a result, the trial court concluded that the employer had not met its burden of proof, and it granted the employee's motion to extinguish the lien.); *Hartford Ins. Co. v. Fed. Express Corp.*, 253 Ga. App. 520 (559 SE2d 530) (2002) (After receiving approximately $65,000 in workers' compensation benefits, the employee settled his third-party suit for a lump sum of $75,000. During a hearing on the insurer's subrogation lien, the employee showed that he had become permanently disabled, continued to suffer severe pain, and needed future medical treatment. Given this evidence, this Court affirmed the trial court's conclusion that the insurer had failed to meet its burden of proving that the employee had been fully compensated for his injuries.).

[10] We also note that, in *North Bros. Co. v. Thomas*, the employee admitted that his medical expenses totaled approximately $60,000. 236 Ga. App. at 840, n. 1. Under those circumstances, the trial court ruled that the insurer could enforce its subrogation lien against the jury's $25,000 award for medical expenses. Id. at 842.

14

against the third-party tortfeasors, the employer *did not request that the jury utilize a special verdict form* when issuing its award. Id. The jury ultimately returned a general verdict for $175,000. Id. In an effort to enforce its subrogation lien against that award, the employer showed that the employee had received about $40,000 in workers' compensation benefits, and it argued that, because the amount of special damages proven at trial totaled about $55,000, "common sense" dictated a finding that the employee had been fully compensated by the jury's award of $175,000. Id. at 334. After opining that the use of a special verdict form would have assisted the employer in meeting its burden of proof, this Court concluded that the employer had failed to show that the employee had been fully compensated, and, as a result, the trial court properly denied its subrogation lien. Id. at 335.

Consequently, we conclude that all of the above cases are factually distinguishable from the instant case, wherein an employer/ insurer has intervened in an employee's suit against a third-party tortfeasor and the employee and tortfeasor have agreed to a lump sum settlement without the input or consent of the employer/insurer. As a result, these cases do not prohibit a trial court, under the instant circumstances, from conducting a hearing on whether the employee was fully

15

compensated so that the employer/insurer can attempt to enforce its subrogation lien under OCGA § 34-9-11.1 (b).

Accordingly, we reject SunTrust's argument that the trial court erred in denying its motion to extinguish Travelers' subrogation lien and in ruling that Travelers would have the opportunity to prove that Patrick had been fully and completely compensated for his injuries so that it can then enforce its lien, pursuant to OCGA § 34-9-11.1 (b).

2. SunTrust also challenges the trial court's ruling that Travelers' exclusion from the mediation session between Patrick and AG compromised Travelers' ability to enforce its subrogation lien. According to the court, Travelers' absolute right to intervene in Patrick's lawsuit against AG, pursuant to OCGA § 34-9-11.1 (b), necessarily encompassed a right to participate in mediation and settlement negotiations between those parties.[11] The court explained that, if Travelers had no opportunity to participate in the negotiations and, thus, to influence the terms of the settlement in a manner that would protect its statutory subrogation lien, its absolute right to intervene would be rendered "futile, unenforceable, and ineffectual." Further, if Patrick and AG were allowed to extinguish Travelers' lien by surreptitiously

_____

[11] See *City of Warner Robins v. Baker*, 255 Ga. App. at 603 (2) (acknowledging that an employer or insurer with a subrogation lien under OCGA § 34-9-11.1 (b) "has an absolute right to intervene in both trials and settlement negotiations").

16

executing a lump sum agreement between themselves that stated that Patrick was not "made whole" by the settlement, then *all* employees and third-party tortfeasors would be able to summarily abrogate the statutory rights of employers and insurers to protect and enforce their workers' compensation subrogation liens.[12]

While we believe that the trial court's order expresses a legitimate concern about the potential consequences of a ruling that sanctions the exclusion of employers and insurers from settlement negotiations between employees and third-party tortfeasors, the question of whether Travelers should have been allowed to appear and participate in the mediation session at issue here – and the nature and extent of such participation – is no longer an issue in this case and is, thus, moot. The trial court did not order the parties to renegotiate the settlement with Travelers' participation and consent; instead, it effectively treated the settlement as final[13] and ruled that Travelers will now be allowed to attempt to prove that Patrick was fully compensated by the

---

[12] See *Dept. of Admin. Svcs. v. Brown*, 219 Ga. App. at 28 (holding that an insurer must have the right to intervene to protect its subrogation rights prior to a jury verdict or a settlement because the employee and the insurer have conflicting interests in the verdict or settlement; for example, the employee's interests would be best served by a general verdict, while an employer's interests would be best served by a special verdict).

[13] Neither Patrick nor AG has sought to make the settlement a consent judgment of the court.

proceeds of the settlement so that it can enforce its subrogation lien. Accordingly, we do not reach the question of whether Travelers should have been allowed to participate in the mediation session and, if so, to what extent.

Even so, we must address SunTrust's bold assertion that, after Travelers learned about the mediation session, Travelers "abandoned" its right to participate in the session by failing to obtain a court order allowing it to participate. The undisputed evidence of record clearly shows that this assertion is completely lacking in merit. In fact, the record shows that, two days before the mediation session, AG's attorneys told Travelers' attorney that the insurer's representative would not be allowed to attend the session and that the representative would be treated as a trespasser if he or she appeared at the session. After Travelers' attorney repeatedly insisted that the insurer had a right to be represented during the mediation session and that it would seek a court order if necessary, AG's attorneys told him that the mediation session had been cancelled. This was apparently untrue, however, because the mediation session was conducted as scheduled, and Patrick and AG settled Patrick's suit in Travelers' absence. Thus, the record clearly does not support SunTrust's assertion that Travelers abandoned its right to participate in the mediation session.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur in judgment only.*

A12A2042. SUNTRUST BANK, AS ADMINISTRATOR OF THE ESTATE OF MICHAEL PATRICK v. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. *See* Court of Appeals Rule 33 (a).